UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY a/s/o
ROBERTA GRILL-DEUTSCH,

                             Plaintiff,                  **DECISION AND ORDER**

                -against-                              22 Civ. 10522 (AEK)

UNITED STATES OF AMERICA,

                             Defendant.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

       Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brought this action, as subrogee of Dr. Roberta Grill-Deutsch, against Defendant United States of America pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-80, alleging that Defendant's employee acted negligently in connection with a motor vehicle accident that took place on March 16, 2022 on the Henry Hudson Parkway (the "Parkway") in Manhattan, New York.  *See* Complaint, ECF No. 1.

       On October 20, 2023, the Court conducted a one-day bench trial, during which the Court heard the testimony of two witnesses: Dr. Grill-Deutsch on behalf of Plaintiff, and United States Army Captain Jelesa Anthony-Hall on behalf of Defendant.  For the reasons that follow, the Court finds that Plaintiff has not proven, by a preponderance of the evidence, that Defendant is liable for the accident.

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF No. 16.

**FINDINGS OF FACT**

The Court makes the following findings of fact as required by Rule 52 of the Federal Rules of Civil Procedure.

**I.      The Parties**

State Farm is an automobile insurance company, and brought this claim in its capacity as the insurer of Dr. Grill-Deutsch, who was operating one of the two vehicles involved in the March 16, 2022 accident.  *See* ECF No. 32 ("Joint Pretrial Order") at 4-5.  Dr. Grill-Deutsch works in Manhattan as a periodontist, and lives in Briarcliff Manor, New York.  Trial Transcript ("Tr.") 6:9-14, 8:18-22.  Dr. Grill-Deutsch has been practicing in Manhattan for approximately 40 years and has lived in the same home in Briarcliff Manor for approximately 30 years; she regularly commutes between Briarcliff Manor and Manhattan via the Parkway.  Tr. 8:15-22.

Defendant is the United States of America, sued here in its capacity as the employer of Capt. Anthony-Hall, who was operating the other vehicle involved in the accident.  Joint Pretrial Order at 5.  On the date of the accident, Capt. Anthony-Hall was an active-duty officer in the United States Army.  Tr. 35:2-16.  When Capt. Anthony-Hall enlisted in the Army in 2007, she served as a military truck driver.  Tr. 35:17-19.  As a military truck driver, Capt. Anthony-Hall was responsible for operating vehicles ranging from "a small size Humvee, which is the equivalent of a small minivan, to a[n] HET, which is a tank carrier."  Tr. 35:20-23.  Capt. Anthony-Hall was a military truck driver for five years; she logged thousands of hours driving military vehicles, and the job required her to drive in urban conditions.  Tr. 35:24-36:5.  While serving as a military truck driver, Capt. Anthony-Hall was never involved in any motor vehicle accidents.  Tr. 36:7-9.  On March 16, 2022, Capt. Anthony-Hall was working as an Assistant Professor at York College in Queens, New York, and the City College of New York in

2

Manhattan, both of which are part of the City University of New York system.  Tr. 36:10-37:17.  In connection with that position, Capt. Anthony-Hall was provided a government-owned vehicle to travel between the Queens and Manhattan campuses.  *See* Tr. 37:24-38:4.  Prior to March 16, 2022, Capt. Anthony-Hall had driven on the Parkway to travel between Manhattan and Queens at least 50 times.  Tr. 39:4-7.

## II.     The Accident

On the afternoon of Wednesday, March 16, 2022 at approximately 4:30 p.m., both Capt. Anthony-Hall and Dr. Grill-Deutsch were driving northbound on the three-lane Parkway.  Tr. 8:3-14, 9:7-10, 39:15-24.  Capt. Anthony-Hall was driving her assigned government-owned vehicle: a 2015 red Ford Transit van which could seat up to 16 passengers (the "Government Vehicle").  *See* Joint Pretrial Order at 5; Tr. 38:23-25, 56:10-14.  Dr. Grill-Deutsch was driving the insured vehicle, a 2019 blue Mercedes Benz Sedan (the "Insured Vehicle").  Joint Pretrial Order at 5; Tr. 18:1-2.  It was a sunny, clear day and the road was dry.  Tr. 9:24-10:5, 48:8-25.  At the time of the accident, the Parkway was somewhat congested with rush hour traffic.  Tr. 10:21-11:4, 48:22-25.

Dr. Grill-Deutsch testified that she was driving at a speed of between 35 and 40 miles per hour in the middle lane of the Parkway.  Tr. 9:7-10, 11:6-10.  Dr. Grill-Deutsch was heading for Exit 14; at this location along the Parkway, both the middle and far right lanes are available as exit lanes, and Dr. Grill-Deutsch intended to exit from the middle lane.  Tr. 12:1-21, 22:7-10.  As Dr. Grill-Deutsch neared Exit 14, somewhere between 125th and 168th Streets, she heard her vehicle make a "crunch" sound.  Tr. 10:6-10, 11:6-17.  At that point she did not observe her vehicle collide with another vehicle.  Tr. 16:5-12.  Dr. Grill-Deutsch testified that when she heard that sound, she "believe[d] [she] was in the middle lane" and did "not believe [she] was

3

crossing the line" between lanes. Tr. 31:9-12. She did not know if the accident was caused by another vehicle attempting to merge into her lane. *See* Tr. 27:25-28:16. In a conversation with a State Farm representative two days after the accident, Dr. Grill-Deutsch stated that at the time of the accident, there was "[a] bit of sun glare" that obstructed her vision, Joint Exhibit[2] ("JX") 17 at G061, G062, though she testified at trial that "it was a sunny day, but the sun did not impede [her] vision," Tr. 23:11-26:21. Feeling "a little shaken," Dr. Grill-Deutsch then pulled over to the right side of the Parkway to get out of traffic. Tr. 10:6-15. The first time Dr. Grill-Deutsch observed the Government Vehicle that was being driven by Capt. Anthony-Hall was when Dr. Grill-Deutsch had "basically pulled in front of" the Government Vehicle after the accident had occurred. *See* Tr. 13:19-25, 15:3-8, 28:8-16.

Capt. Anthony-Hall testified that on the afternoon of March 16, 2022, she was driving on the Parkway, also heading towards Exit 14. Tr. 39:11-24. Capt. Anthony-Hall was driving in the far right lane and was moving at a speed of approximately 10 to 15 miles per hour. Tr. 55:5-14. Although she observed that other lanes were moving faster, Capt. Anthony-Hall testified that she did not attempt to change lanes because "[i]t doesn't make sense to attempt to navigate a 16-passenger van in and out of lanes." Tr. 55:5-56:18. Capt. Anthony-Hall had been driving in the far right lane for approximately five to ten minutes when she felt something make contact with the rear of her vehicle, which prompted her to look in the rearview mirror. Tr. 39:15-40:14. Capt. Anthony-Hall then saw the Insured Vehicle behind her, and testified that she watched through her rearview mirror as the vehicle moved up the driver's side of her vehicle, scraping along the side of the Government Vehicle. Tr. 39:15-24. She had not taken notice of the Insured

---

[2] Prior to trial, the parties stipulated to the admission of 18 joint exhibits, which were all received in evidence. *See* Tr. 2:24-3:17; *see also* Joint Pretrial Order at 5.

Vehicle before the accident occurred.  Tr. 43:8-10.  Capt. Anthony-Hall then turned her hazard lights on and pulled over on the Parkway as far to the right as she could.  Tr. 39:15-24.

Once on the side of the Parkway, both drivers observed the damage to their vehicles.  *See* Tr. 14:15-15:14, 45:13-22.  They exchanged contact information and attempted to call the authorities.  *See* Tr. 15:15-16:1, 44:11-19.  Capt. Anthony-Hall spoke with a police officer, but no incident report was generated at that time.[3]  Tr. 44:22-45:6.  At no point while on the side of the road did the two drivers discuss how the incident had occurred.  Tr. 16:2-4.

The Court received in evidence a series of photographs taken immediately after the accident.  *See* JXs 3-6, 8, 18.  Images of the Government Vehicle show a scrape along the driver's side between the rear of the vehicle and roughly midway between the rear and front wheels.  *See* JXs 3, 6.  The far left side of the rear bumper appears to be dented and mildly scraped as well.  *See* JXs 4, 5.  There is a round sensor missing from the side panel between the back wheel and the rear bumper.  JX 3; *see also* Tr. 45:16-19 ("there was damage to the rear driver side bumper where a driver side sensor was missing").  Photographs of the Insured Vehicle show a dent to the front quarter panel on the passenger side.  JXs 8, 18.  The damage is primarily located above the front passenger-side wheel, though some scraping extends to the front passenger-side door.  *See* JXs 8, 18 at P017.  It appears that the sensor that is missing from the Government Vehicle is lodged in the front panel of the Insured Vehicle, immediately behind the passenger-side head lamp.  *See* JX 18 at P023; Tr. 61:22-62:7.

---

[3] Upon returning home, Capt. Anthony-Hall completed a "Report of Motor Vehicle Accident," which she submitted to the New York State Department of Motor Vehicles.  Tr. 47:8-20; *see* JX 1.

The total cost of repairing the damage to the Insured Vehicle caused by the March 16, 2022 accident was $9,784.79.  Joint Pretrial Order at 5.  State Farm paid $9,284.79 to repair the Insured Vehicle, while Dr. Grill-Deutsch paid a deductible of $500.  *Id.*

### III.     Credibility Findings Regarding Disputed Facts

With the limited exceptions discussed below, the Court generally found both witnesses to be credible in their accounts of the March 16, 2022 accident.

The first disputed fact relates to the speed that Capt. Anthony-Hall was traveling in the far right lane at the time of the accident.  In contrast to Capt. Anthony-Hall's testimony about the relative speeds of traffic in different lanes, Dr. Grill-Deutsch testified that traffic was not travelling faster in the middle lane than in the right lane prior to the accident.  Tr. 23:5-10.  The Court does not credit this testimony.  Dr. Grill-Deutsch testified that she was driving at approximately "35 to 40 miles per hour."  Tr. 11:8-10.  Meanwhile, Capt. Anthony-Hall testified that her lane of traffic was "crawling," which resulted in her traveling only 10 to 15 miles per hour in the far right lane.  Tr. 55:5-10.  Capt. Anthony-Hall's testimony is consistent with a statement she made to a State Farm representative just days after the incident.  *See* JX 16 at P009 ("[I]t was heavy traffic . . . .  We were probably going about 10 to 20 miles an hour.").  Given Dr. Grill-Deutsch's somewhat imprecise recollection of other details leading up to the accident, *see* Tr. 28:14-16 (conceding that the first time she remembered seeing the red van was after the accident happened), and her prior admission, considerably closer in time to the accident, that her vision was impeded by "[a] bit of sun glare," JX 17 at G061, the Court does not find it likely that Dr. Grill-Deutsch accurately recalled at trial the speed that drivers in the adjacent lane were traveling prior to the accident.  The Court finds the more credible testimony on this point to be Capt. Anthony-Hall's recollection that the far right lane "was moving slower than the other

6

lanes," Tr. 49:1-7, and that Dr. Grill-Deutsch was traveling faster than Capt. Anthony-Hall at or about the time the accident occurred.

There is also an inconsistency in the testimony of the witnesses regarding which lane Dr. Grill-Deutsch was traveling in immediately prior to the accident. Capt. Anthony-Hall testified that she believed the Insured Vehicle had been traveling behind her in the far right lane before moving into the middle lane at the time the accident occurred. Tr. 43:14-44:3. This is inconsistent with Dr. Grill-Deutsch's testimony that she was traveling exclusively in the middle lane prior to the accident. *See* Tr. 32:14-20. Capt. Anthony-Hall stated that the basis for her belief as to the position of the Insured Vehicle was that "[w]hen [she] felt the nudge, [she] looked in [her] rearview mirror," at which point she saw the Insured Vehicle behind her. Tr. 44:5-10. Capt. Anthony-Hall acknowledged, however, that prior to feeling an impact, she had not observed the Insured Vehicle. *See* Tr. 43:8-10. The Court need not directly resolve this discrepancy, however, as Defendant conceded that it had no reason to question Dr. Grill-Deutsch's account that she was driving in the middle lane "for some period of her drive" on the Parkway prior to the accident. *See* Tr. 75:8-76:23.

Notably, there is *no* discrepancy in the testimony of the witnesses regarding which lane Capt. Anthony-Hall was traveling in prior to the accident. Capt. Anthony-Hall specifically testified that she was driving in the far right lane with the intent of keeping right until Exit 14. Tr. 55:5-56:2. Meanwhile, Dr. Grill-Deutsch testified that she did not see the Government Vehicle operated by Capt. Anthony-Hall until they were both pulling over to the side of the road, Tr. 13:19-25, 15:3-8, 28:14-16, and further testified that she did not know whether the Government Vehicle had attempted to merge into the middle lane, Tr. 28:11-13.

**CONCLUSIONS OF LAW**

The Court now considers whether Plaintiff has carried its burden of establishing that Defendant's negligence caused the March 16, 2022 accident as a matter of law.

### I. The Federal Tort Claims Act

"The FTCA allows plaintiffs to recover damages for an injury caused by the negligence of government employees acting within the scope of their employment." *Taylor v. United States*, 121 F.3d 86, 89 (2d Cir. 1997). Specifically, the FTCA provides that the United States is liable for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1)); *see Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). Pursuant to the FTCA, an "employee of the government" includes an employee of any federal agency, and members of the military forces of the United States. 28 U.S.C. § 2671. In an action brought under the FTCA, "courts are bound to apply the law of the state . . . where the accident occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000); *see also* 28 U.S.C. § 1346(b)(1). The parties agree that the substantive law of New York applies here. *See Taylor*, 121 F.3d at 89; Joint Pretrial Order at 4.

### II. Negligence

To establish that a defendant acted negligently under New York law, a plaintiff must establish the following three elements by a preponderance of the evidence: "(1) the existence of a duty on defendant's part as to [the] plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981); *accord Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir.

8

2013). "One essential element of a negligence claim is that the breach proximately caused plaintiff's injuries." *Rhone v. United States*, No. 04-cv-5037 (PKL), 2007 WL 3340836, at *6 (S.D.N.Y. Nov. 9, 2007) (quotation marks omitted).

"Negligence cannot be inferred from the mere fact that an accident occurred, nor can it be established by speculation or surmise." *Leonardi v. United States*, No. 11-cv-4827 (LDW) (GRB), 2013 WL 5295714, at *4 (E.D.N.Y. Sept. 18, 2013) (citing *Bernstein v. City of New York*, 511 N.E.2d 52, 53 (N.Y. 1987)). While inferences of negligence may be drawn from circumstantial evidence, those inferences cannot sustain a finding of negligence unless they are "the only ones which reasonably could be drawn from the evidence presented." *Mehra v. Bentz*, 529 F.2d 1137, 1139 (2d Cir. 1975); *accord Molina v. United States*, No. 11-cv-4097 (ERK), 2015 WL 4394045, at *5 (E.D.N.Y. July 16, 2015).

"Under New York law, the burden is on the plaintiff to prove, by a preponderance of the evidence, that he [or she] is entitled to a damages award." *Cabrera v. United States*, No. 18-cv-7270 (SDA), 2020 WL 5992929, at *12 (S.D.N.Y. Oct. 9, 2020).

### III.     New York Vehicle and Traffic Law

"Various provisions of the New York Vehicle and Traffic Law ('VTL') and principles of liability under New York law impose a duty upon drivers to operate their vehicles with reasonable care[,] taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." *Laidlaw v. United States*, No. 16-cv-4681 (KAM) (ARL), 2019 WL 1313919, at *10 (E.D.N.Y. Mar. 22, 2019) (quotation marks omitted). "[A] violation of the [VTL] is negligence per se." *Sanchez v. United States*, No. 13-cv-2536 (JPO), 2015 WL 667521, at *2 (S.D.N.Y. Feb. 17, 2015) (citing *Gray v. Wackenhut Servs., Inc.*, 446 F. App'x 352, 354 (2d Cir. 2011) (summary order)). "If one party establishes *prima facie* a violation of

the traffic law, the burden shifts to the other party to produce evidence showing that there was no violation or offering a sufficiently reasonable explanation or excuse for the violation." *Dershowitz v. United States*, No. 12-cv-8634 (SN), 2015 WL 1573321, at *24 (S.D.N.Y. Apr. 8, 2015).

Plaintiff asserts that Capt. Anthony-Hall violated Section 1128(a) of the VTL on the afternoon of March 16, 2022. *See* Joint Pretrial Order at 3; ECF No. 29 at 1, 3. Under that statute, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." N.Y. Veh. & Traf. Law § 1128(a); *see also Guerrero v. Loiacono*, --- F. Supp. 3d ---, 2023 WL 5443481, at *7-8 (E.D.N.Y. Aug. 24, 2023) (denying summary judgment in case involving negligence claim based, in part, on alleged violation of Section 1128(a)).

## IV. Liability

Having considered all of the evidence and assessed the credibility of the witnesses, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant's negligence was the cause of accident on March 16, 2022.

Importantly, neither driver testified that the accident was caused by Capt. Anthony-Hall improperly attempting to merge into the middle lane in violation of Section 1128(a) of the VTL. In fact, there was no testimony that Capt. Anthony-Hall attempted to merge at all. Plaintiff's counsel argued in his summation following the close of evidence that Capt. Anthony-Hall must have struck the Insured Vehicle while attempting to merge into the middle lane, *see* Tr. 85:13-18, but Plaintiff adduced no testimony to support that theory. Rather, Dr. Grill-Deutsch testified that she did not know how the vehicles came into contact with one another, and did not see the Government Vehicle operated by Capt. Anthony-Hall until after the accident, as both drivers

were pulling over to the side of the road. Tr. 13:19-25, 15:3-8, 28:14-16. She further testified that she did not know whether the Government Vehicle had attempted to merge into the middle lane. Tr. 28:11-13. Meanwhile, Capt. Anthony-Hall specifically testified that she was driving in the far right lane with the intent of keeping right until Exit 14. Tr. 55:5-56:2. She credibly testified that although the middle lane was moving faster than the far right lane, it would not have made sense "to attempt to navigate a 16-passenger van in and out of lanes." *See* Tr. 56:10-14. In sum, there is a complete absence of any testimony to support Plaintiff's argument that Capt. Anthony-Hall improperly merged from the right lane into the center lane. *See Laidlaw*, 2019 WL 1313919, at *11 (concluding plaintiff driver failed to show defendant violated Section 1128(a) where the plaintiff "did not testify that she saw the postal truck cross a lane of traffic" and rather "only saw the truck after impact").

Further, the photographic evidence alone is not sufficient to establish Defendant's liability. Plaintiff maintains that the photographs are circumstantial proof that the accident was Capt. Anthony-Hall's fault, asserting that the damage to the Insured Vehicle—primarily located around the front passenger-side wheel base—indicates that Capt. Anthony-Hall "had to merge and hit" the Insured Vehicle. *See* Tr. 79:16-80:8. But that argument is speculative and not grounded in the evidence. The photographs do not speak for themselves in this regard, and Plaintiff's counsel cannot serve as an expert in vehicular damage or an accident reconstructionist. In short, the photographs do not provide definitive evidence that the damage to the Insured Vehicle is indicative of a particular type of accident. For example, while Plaintiff's theory regarding how the Government Vehicle's driver's-side rear sensor ended up lodged near the front of the Insured Vehicle, *see* JX 18 at P021, could support a conclusion that Defendant caused the accident, the dent in the driver's-side rear bumper of the Government Vehicle, *see*

11

JXs 3, 4, could equally support a conclusion that the Government Vehicle was struck with force from behind or from the right. It is therefore not possible from the photographs for the Court to exclude the possibility that the accident was caused by Dr. Grill-Deutsch, and not Capt. Anthony-Hall. *See Mehra*, 529 F.2d at 1139 ("If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts.").

In sum, Plaintiff has failed to establish that Capt. Anthony-Hall violated Section 1128(a) of the VTL,[4] and has not carried its burden of showing that Defendant's negligence caused the March 16, 2022 accident on the Parkway.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is not liable to Plaintiff under the FTCA for the motor vehicle accident that occurred on March 16, 2022.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and to close this case.

Dated: December 27, 2023
      White Plains, New York                          **SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

---

[4] Because Plaintiff failed to make a *prima facie* showing that Defendant violated the VTL, there is no shifting of the burden here, and Defendant need not produce evidence showing that there was no violation or offer an explanation or excuse for the purported violation. *Cf. Dershowitz*, 2015 WL 1573321, at *24.